UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

THE INDEPENDENCE PROJECT, INC., a   :
New Jersey Non-Profit Corporation,   :
and JOHN MEGGS, an Individual,   :
  :
      Plaintiffs,   :
  :
vs.   :  Case No.
  :
LCRF, LLC, a Missouri Limited Liability   :
Company,   :
  :
      Defendant.   :
_____   :

## COMPLAINT

Plaintiffs, THE INDEPENDENCE PROJECT, INC., a New Jersey Non-Profit Corporation, and JOHN MEGGS, an Individual, on their behalf and on behalf of all other mobility impaired individuals similarly situated ("Plaintiff" or "Plaintiffs"), hereby sue the Defendant, LCRF, LLC, a Missouri Limited Liability Company ("Defendant"), for injunctive Relief, damages, attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. §12181 *et seq*.

## COUNT I
## VIOLATION OF TITLE III OF THE
## AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12181, *et seq*.

1.    This is an action for declaratory and injunctive relief pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

2.    Venue is properly located in this Court; Eastern District of Missouri, Eastern Division pursuant to 28 U.S.C. §1391(b) and E.D. Mo. L.R. 3 - 2.07.  Venue lies in the judicial district of the property situs.  The Defendant's property is located in and does business within this judicial district.

1

3.      All events giving rise to this lawsuit occurred in the Eastern District of Missouri, within the boundaries of Saint Louis County, Missouri.

4.      Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*  See also 28 U.S.C. § 2201 and § 2202.

5.      Plaintiff, JOHN MEGGS, is an individual residing at 1128 Maynard Drive, Duarte, California, 91010, in the County of Los Angeles.

6.      Plaintiff, THE INDEPENDENCE PROJECT, INC., is a nonprofit corporation formed under the laws of the State of New Jersey.  THE INDEPENDENCE PROJECT, INC. maintains is principal office at 1002 Central Ave, New Providence, New Jersey 07947, in the County of Union.

7.      Defendant, LCRF, LLC, holds title to the subject property alleged by the Plaintiffs to be operating in violation of Title III of the ADA.

8.      The Defendant's property, also known as Flo Lin Corners I and Flo Lin Corners II located at 1752-1792 North New Florissant Road, Florissant, Missouri 63033 (together being known as the "Subject Property").

9.      Plaintiff, JOHN MEGGS is a California resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.  Mr. Meggs is a paraplegic as the result of a spinal cord injury and requires a wheelchair for mobility at all times.

10.     Plaintiff operates a business incorporated in the State of Missouri with its registered business address and his business partners' home address both being 2236 Renault Drive, Apartment C, St. Louis, Missouri 63146.

11.     Plaintiff regularly visits St. Louis for pleasure and to conduct business; Mr. Meggs is

a dee-jay, internet radio host, podcast host and musical talent scout.  Mr. Meggs regularly visits the St. Louis area to promote these endeavors and search for new musical talent by attending live musical events across the Greater Saint Louis area.

12.     Mr. Meggs is an extensive traveler by air, bus, and train. Mr. Meggs makes several trips to the St. Louis area per year by air from Los Angeles. These trips last, on average, 2-3 weeks after which Mr. Meggs travels by bus or train to visit his extensive family in the Kansas City area before returning home to Los Angeles by air. At this time, Mr. Meggs has return visits to the St. Louis area scheduled for December of 2018 and May and June of 2019, during which he will stay at area hotels, closely located near the airport.

13.     Location of the Subject Property is in close proximity to that of St. Louis Lambert International Airport and the hotels in the surrounding area where Mr. Meggs often stays during his frequent visits.

14.     Plaintiff has visited the subject property that forms the basis of this lawsuit on several occasions with his last visit occurring in July 2018.  Mr. Meggs plans to return to the subject property during his next visit to the area in order to avail himself of the goods and services offered to the public at the property.

15.     Plaintiff has encountered architectural barriers at the subject property.  The barriers to access at the property have endangered his safety.  The plaintiff is also a member of the plaintiff organization, THE INDEPENDENCE PROJECT, INC., discussed below in paragraph 16, and acts as a tester on their behalf to ensure the compliance of public accommodations under the Americans with Disabilities Act.

16.     Plaintiff, THE INDEPENDENCE PROJECT, INC. is a nonprofit New Jersey corporation.  Members of this organization include individuals, residing across the United States,

with disabilities as defined by the ADA.  The purpose of this organization is to represent the interest

of its members across the United States by assuring places of public accommodation are accessible

to and usable by, the disabled and that its members are not discriminated against because of their

disabilities.

17.     THE INDEPENDENCE PROJECT, INC. and its members have suffered and will

continue to suffer direct and indirect injury as a result of Defendant's discrimination until Defendant

has been compelled to comply with the requirements of the ADA.  One or more of its members has

suffered an injury that would allow it to bring suit in its own right.  THE INDEPENDENCE

PROJECT, INC. has also been discriminated against due to its association with its disabled members

and their claims.

18.     Defendant, LCRF, LLC, owns, leases, leases to, or operates a place of public

accommodation as defined by the ADA and the regulations implementing the ADA, 28 CFR

36.201(a) and 36.104.  Defendant is responsible for complying with the obligations of the ADA.

The places of public accommodation that the Defendant owns, operates, leases or leases to are

known as Flo Lin Corners I (also known as "Flo-Lin Corners Phase One") and Flo Lin Corners II

(also known as "Flo-Lin Corners Phase Two") located at 1752-1792 North New Florissant Road,

Florissant, Missouri 63033.

19.     THE INDEPENDENCE PROJECT, INC. and JOHN MEGGS have a realistic,

credible, existing and continuing threat of discrimination from the Defendant's non-compliance with

the ADA with respect to this property as described but not necessarily limited to the allegations in

paragraph 22 of this complaint.  Plaintiffs have reasonable grounds to believe that they will continue

to be subjected to discrimination in violation of the ADA by the Defendant.  JOHN MEGGS desires

to visit the subject property, not only to avail himself of the goods and services available at the

4

property but to assure himself that this property is in compliance with the ADA; so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

20.     Defendant has discriminated against the individual Plaintiff and members of the corporate Plaintiff by denying them access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the property, as prohibited by 42 U.S.C. § 12182 *et seq*.

21.     Defendant has discriminated, and is continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, *inter alia*, have accessible facilities by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000 or less). A preliminary inspection of subject property has shown that violations exist.

22.     The violations contained at each of the Defendant's locations and throughout each tenant space are quite similar and require remediation in order to be compliant with the ADA. These are the barriers to access that JOHN MEGGS personally encountered, including, but not limited to the following:

### Flo-Lin Corners I ("Phase One")

**Parking and Exterior Accessible Route**

a.   Parking spaces throughout the parking lot and those designated as accessible at Flo-Lin Corners I are not maintained, contain slopes beyond the allowable limits, and lack adequate ADA signage, violating Sections 502 and 502.4 of the 2010 ADA Standards.  These conditions, during several visits, prevented Mr. Meggs from unloading from his vehicle freely and safely, as sloping presents a tipping hazard.  On certain occasions, he would park away from the accessible parking at the shopping center so that he could access the property safely.

5

b.   Parking spaces adjacent to JN Market fail to provide an accessible route to tenants or curb ramps, violating Sections 402, 502 and 502.4 of the 2010 ADA Standards.  This barrier, on several occasions, prevented Mr. Meggs from accessing the accessible route from his vehicle both freely and safely.

c.   Curb ramps provided to access tenant spaces are not maintained, contain slopes beyond limits and lack adequate ADA signage, in violation of Sections 502 and 502.4 of the 2010 ADA Standards. Once again, slopes beyond the allowable limits present Mr. Meggs with the danger of tipping over in his wheelchair.

d.   The exterior accessible route from parking spaces at Flo Lin Corners I fails to provide a safe accessible route to ramps or curb ramps, violating Section 402 of the 2010 ADA Standards. Mr. Meggs was forced to travel through the traffic area of the parking lot in order to access the curb ramp, presenting him with the danger of encountering on-coming vehicles.

e.   Flo Lin Corners I fails to provide a safe accessible route to the adjacent street/sidewalk/bus stop, violating Section 206.2.1 of the 2010 ADA Standards.  The lack of a safe, accessible route renders impossible, the option of using public transportation for Mr. Meggs.

**Access to Goods and Services**

f.   JN Market and Meyers Lounge fail to provide Mr. Meggs with accessible dining tables, violating Section 902 of the 2010 ADA Standards. Mr. Meggs was unable to dine comfortably due the lack of accessible tables.

g.   Entering tenant spaces is impeded by abrupt changes of level and slopes at the base of the door, violating Section 404 of the 2010 ADA Standards. Abrupt changes of level can cause damage to Mr. Meggs' wheelchair, while sloping at the base of doors present a tipping hazard and increases the difficulty of maneuvering.

h.   Payment counters throughout Flo Lin Corners I, including those at JN Market and Meyers Lounge are mounted beyond the reach of Mr. Meggs, violating Section 308 of the 2010 ADA Standards.

**Restrooms**

i.   Restrooms at JN Market and Meyers Lounge were reported to be unsafe for use by Mr. Meggs. Inspection revealed Mr. Meggs was unable to use the restrooms safely due to a lack of accessibility.  Restrooms in question contain inaccessible water closets which lack proper controls and a lack of wheelchair maneuvering space in violation of Section 601 of the 2010 ADA Standards.

j.   The restroom at Meyers Lounge provides dispensers which are mounted beyond the reach of wheelchair users and are inaccessible to Mr. Meggs, violating Section 308 of the 2010 ADA Standards.

k.   The lavatories at Meyers Lounge lack proper knee clearance and accessibility in violation of Section 606 of the 2010 ADA Standards. Mr. Meggs was unable to freely access the lavatory which prevented him from washing his hands before exiting the restroom.

l.   Meyers Lounge provides restrooms that contain improper centerlines for the water closets and flush controls mounted on the wall side.  These conditions are in violation of Section 604 of the 2010 ADA Standards.  Improper centerlines make the transition from his wheelchair to the water closet exceedingly difficult for Mr. Meggs and present him with the danger of a fall. During past visits the preceding conditions have prevented Mr. Meggs from using the water closet and accessing the flush controls.

m. The restroom door, at both Meyers Lounge and JN Market, is impeded by a lack of maneuvering clearance, round door knobs, and improper signage violating Section 404 of the 2010 ADA Standards. Mr. Meggs is unable to exit the restroom without assistance due to this lack of

maneuvering clearance; thus, he cannot enter the restroom alone and enjoy any sort of privacy.

## Flo Lin Corners II ("Phase Two")

**Parking and Exterior Accessible Route**

n.   Parking spaces adjacent Show Me's Sports Bar lack adequate access aisles and fail to provide an accessible route to tenants or curb ramps, violating Sections 402, 502 and 502.4 of the 2010 ADA Standards. These conditions during several visits prevented Mr. Meggs from unloading from his vehicle freely and safely. On certain occasions Mr. Meggs would park away from the shopping center to insure he could freely access his vehicle.

o.   Parking spaces throughout Flo Lin Corners II are not maintained; contain slopes beyond limits and lack adequate ADA signage in some locations, violating Sections 502 and 502.4 of the 2010 ADA Standards.  Excessive slopes within the parking spaces and along the route are a tipping hazard for Mr. Meggs.

p.   Curb ramps which are provided to access the tenant stores at Flo Lin Corners II are unsafe for wheelchair users and are not provided at all in some areas of the center. The curb ramps that are present contain excessive slopes, abrupt changes of level and lack level landings, violating Sections 402 and 406 of the 2010 ADA Standards.  Mr. Meggs dealt with a lack of maneuvering space at the top and bottom of the curb ramps.  These conditions are unsafe for Mr. Meggs when he accesses the curb ramps as they present a tipping hazard.

q.   The exterior accessible route from the parking spaces at Flo Lin Corners II fails to provide a safe, accessible route to ramps or curb ramps, violating Section 402 of the 2010 ADA Standards. Mr. Meggs was forced to travel through the traffic area of the center in order to access the curb ramp which adds the additional danger of facing on-coming vehicles.

r.   Flo Lin Corners II fails to provide a safe accessible route to the adjacent street/sidewalk/bus

stop, violating Section 206.2.1 of the 2010 ADA Standards.  The lack of a safe, accessible route renders impossible, the option of using public transportation for Mr. Meggs.

**Access to Good and Services**

    s.  Show Me's Sports Bar fails to provide accessible dining tables for those in wheelchairs, violating Section 902 of the 2010 ADA Standards.  Mr. Meggs was unable to dine comfortably due to a lack of accessible tables.

    t.  Payment counters throughout Flo Lin Corners II, including those at Show Me's Sports Bar, are mounted beyond the reach of Mr. Meggs, violating Sections 308 and 904 of the 2010 ADA Standards.

    u.  Entering tenant spaces is impeded by abrupt changes of level and slopes at the base of the door, violating Section 404 of the 2010 ADA Standards. Abrupt changes of level can cause damage to Mr. Meggs' wheelchair, while sloping at the base of doors present a tipping hazard and increases the difficulty of maneuvering.

**Restrooms**

    v.  Restrooms provided at Flo Lin Corners II are improperly designed, including those within Show Me's Sports Bar and 2010 Nails & Spa. Inspection revealed that Mr.  Meggs was unable to use the restrooms freely and safely due to a lack of accessibility, violating Section 601 of the 2010 ADA Standards.   The restrooms provided contained improper water closets which lack the proper controls, and a lack of adequate maneuvering clearance. These violations affect Mr. Meggs in several ways; improper water closets prevent Mr. Moore was freely accessing the toilet and its controls while adequate maneuvering clearance is needed to freely exit the stall and restroom without assistance.

    w.  The restrooms at Show Me's Sports Bar and 2010 Nails & Spa, each provide dispensers

mounted beyond the reach of wheelchair users and are inaccessible to Mr. Meggs, violating Section 308 of the 2010 ADA Standards.

x.   Lavatories located within the restrooms at Show Me's Sports Bar and 2010 Nails & Spa lack the proper knee clearance and accessibility preventing Mr. Meggs from freely accessing the lavatory, a violation of Section 606 the 2010 ADA Standards. Mr. Meggs was unable to wash his hands before exiting the restroom.

y.   Show Me's Sports Bar and 2010 Nails & Spa provide restrooms that contain improper centerlines for the water closets and flush controls mounted on the wall side, violating Section 604 of the 2010 ADA Standards.  Mr. Meggs was unable to access flush controls while in the restrooms due to their improper location.

z.   Mr. Meggs was impeded from using the restrooms doors at Show Me's Sports Bar and 2010 Nails & Spa due to the presence of round door knobs, improper signage and a lack of maneuvering clearance, violating Section 404 of the 2010 ADA Standards; levered door handles are required. Mr. Meggs is unable to exit the restroom without assistance due to this lack of maneuvering clearance; thus, he cannot enter the restroom alone and enjoy any sort of privacy.

23.    All of the foregoing violations are also violations of the 1991 American with Disabilities Act Accessibility Guidelines ("ADAAG") and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

24.    The discriminatory violations described in paragraph 22 are not an exhaustive list of the Defendant's ADA violations.  Plaintiffs require a thorough inspection of the Defendant's place of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access.  The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services,

programs and activities of the Defendant's buildings and its facilities, and have otherwise been discriminated against and damaged by the Defendant because of the Defendant's ADA violations, as set forth above.

26.     The individual Plaintiff, the members of the Plaintiff group, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.  In order to remedy this discriminatory situation, the Plaintiffs require an inspection of the Defendant's place of public accommodation in order to determine all of the areas of non-compliance with the Americans with Disabilities Act.

26.     Defendant has discriminated against the individual and corporate Plaintiffs by denying them access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 *et seq.* and 28 CFR 36.302 *et seq.*  Furthermore, the Defendant continues to discriminate against the individual Plaintiff, the members of the plaintiff group and all those similarly situated by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

27.     Plaintiffs are without adequate remedy at law and are suffering irreparable harm. Considering the balance of hardships between the Plaintiffs and the Defendant, a remedy in equity is warranted.  Furthermore, the public interest would not be disserved by a permanent injunction.

28.     Plaintiffs have retained the undersigned counsel and are entitled to recover attorney's

fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

29.     Defendant is required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendant's place of public accommodation since January 26, 1992, then the Defendant is required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendant's facility must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

30.     Notice to Defendant is not required as a result of the Defendant's failure to cure the violations by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000 or less).  All other conditions precedent have been met by Plaintiffs or waived by the Defendant.

31.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiffs' request for Injunctive Relief, including an order to require the Defendant to alter the subject property to make the property readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the property until such time as the Defendant has cured violations of the ADA.

**WHEREFORE,** Plaintiffs respectfully request:

a.     The Court issue a Declaratory Judgment that determines that the Defendant, at the

commencement of the subject lawsuit are in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*

b.    Injunctive relief against the Defendant including an order to make all readily achievable alterations to the facility; or to make such facility readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c.    An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205.

d.    Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

Respectfully submitted,

Dated: November 15, 2018

/s/ Jon G. Shadinger Jr.

Jon G. Shadinger Jr., Esq. (70443MO)
Shadinger Law, LLC
100 S 4th Street
Suite 550
St. Louis, MO 63102
Tel. (314) 279-7416
Fax (314) 898-0423
js@shadingerlaw.com
*Attorney for Plaintiffs, The Independence Project, Inc. and John Meggs*

13